UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. MORASSO,

    Plaintiff,

vs.

LOCAL 636 OF THE UNITED ASSOCIATION
OF JOURNEYMEN and JOINT APPRENTICESHIP
COMMITTEE OF PIPEFITTERS LOCAL NO. 636
OF THE UNITED ASSOCIATION OF JOURNEYMEN,

    Defendants.

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JAMES MORASSO, by and through his attorneys, TERESA J. GORMAN, PLLC, for his Complaint, states:

### JURISDICTION AND PARTIES

1. This suit is brought pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*.

2. This court has jurisdiction pursuant to 42 U.S.C. § 2000e-5, 28 U.S.C. § 1331, and 28 U.S.C. §1367(a).

3. Plaintiff is a citizen of the United States and resides in Livonia, Michigan.

4. Defendant Local 636 of the United Association of Journeymen ("Local 636") is a labor union that employs over 50 employees and employed Plaintiff its apprenticeship program.

5. Defendant Joint Apprenticeship Committee of Pipefitters Local 636 of the United Association of Journeymen ("Defendant Committee") is an entity which works with Local 636 of the United Association of Journeymen in the training and employment of persons in the Eastern District of Michigan seeking to become journeyman pipefitters and full voting members in Local 636.

6. Plaintiff was Defendants' employee within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*.

7. Defendants meet all of the requirements for employer status under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*.

8. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

9. The events giving rise to this cause of action occurred in the City of Troy, Oakland County, Michigan in the Eastern District of Michigan. Accordingly,

venue lies in the United States District Court for the Eastern District of Michigan under 28 USC §1391(b).

## **GENERAL ALLEGATIONS**

10. Plaintiff incorporates here all previously stated allegations.

11. Plaintiff is a 32 year old disabled man who has receiving on-going treatment for Bi-Polar Disorder and chronic alcoholism since 2010.

12. In 2017, Plaintiff, a member of Defendant Union, was placed in employment by Defendant Union as a pre-apprentice with Golden Refrigerant.

13. In 2017 and dates thereafter, Carl Grolle, the owner of Golden Refrigerant, was the leader of Defendant Committee.

14. On October 6, 2017, Plaintiff commenced a 5 year (10 period) union apprenticeship with Defendants for the training in the specialized skills necessary for employment in the Pipe Trades Industry.

15. Defendants assigned Plaintiff to various contractors throughout the Detroit area. Plaintiff remained with Golden Refrigerant as an apprentice for a period of time.

16. Defendant Union determined which apprentice would work with a particular contractor and where they would work.

17. Defendant Union determined which particular contractor Plaintiff would work for.

18. Defendant Union negotiated Plaintiff's pay and benefits.

19. Plaintiff did not have the right to refuse the assignment to or leave the assignment to a particular contractor.

20. If Plaintiff had had any problem with a certain contractor (which he did not), he would have been required to seek intervention or resolution-approval from Defendant Union.

21. Plaintiff rotated on assignments to various contractors at the discretion of Defendant Union.

22. While assigned to work at a contractor, Plaintiff was required to attend and did attend workshops and classes conducted by Defendant Committee.

23. On May 13, 2018, Plaintiff was admitted to Henry Ford – Maplegrove, an addiction treatment center in West Bloomfield, Michigan for treatment of his disabilities, bi-polar disorder and alcoholism.

24. On May 13, 2018, Plaintiff informed Carl Grolle that he was being admitted Henry Ford- Maplegrove for treatment of his disabilities, bi-polar disorder and alcoholism.

25. On May 13, 2018, Plaintiff's then-father-in-law, Larry Giroux, was also made aware that Plaintiff was being admitted to Henry Ford- Maplegrove for treatment of his disabilities, bi-polar disorder and alcoholism.

26. On May 13, 2018, Larry Giroux was the training director at Defendant Committee's training center.

27. Plaintiff remained hospitalized for five (5) days until May 18, 2018.

28. Plaintiff provided medical documentation to Defendants regarding the May 13-18, 2018 hospitalization.

29. The medical documentation provided to Defendants regarding Plaintiff's May 13-18, 2018 hospitalization put Defendants on notice that Plaintiff is a disabled individual.

30. On October 29, 2018, Plaintiff missed class at Defendant Committee's training center due to hospitalization for treatment of his disabilities.

31. On November 1, 2018, Plaintiff provided medical documentation to Defendants regarding the on-going treatment of his disabilities.

32. On or about November 1, 2018, Plaintiff met with Mr. Giroux. At their meeting, Giroux verbally warned Plaintiff about missed days and asked if he was serious about the apprenticeship. Plaintiff assured Mr. Giroux that he was dedicated to the apprenticeship but that he was struggling with his bi-polar disorder and alcoholism and working on recovery through counseling and AA.

33. On December 18, 2018, Plaintiff provided Defendants with correspondence from Eastwood Clinics confirming that he had been in active treatment with the clinic for his disabilities since July 7, 2018.

5

34. In December 2018, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

35. In December 2018, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

36. On March 18, 2019, Plaintiff missed class due to the birth of his child.

37. On June 14, 2019, Plaintiff was called before Defendant Committee's Executive Board, a group of working union members who keep track of and address apprentices who have issues during apprenticeship, such as absences and homework. At this meeting, Plaintiff again provided Defendants with medical documentation and explained that he was receiving on-going treatment for his disabilities. He further provided details about the disabilities themselves.

38. In June 2019, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

39. In June 2019, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

40. On June 24, 2019, Plaintiff missed class due to his disabilities.

6

41. On July 8, 2019, Plaintiff met with the new director of the training center, Jim Wilson. During this meeting, Mr. Wilson advised Plaintiff that he was already aware of Plaintiff's disabilities but that missed days cannot be tolerated. Plaintiff explained that he had disabilities for which he was being treated through counseling and AA and that he had regular doctor appointments. Mr. Wilson responded by presenting Plaintiff with a letter requiring Plaintiff to attend a formal meeting with Defendant Committee.

42. On July 11, 2019, Plaintiff provided Defendants with correspondence from his physician requesting that Plaintiff be excused from the June 24, 2019 class due to medical issues.

43. On July 23, 2019, Plaintiff met with Defendant Committee and explained that his absences are due to treatment for his disabilities. He provided Defendant Committee with medical documentation and explained that he is attending counseling and going to AA. Defendant Committee responded only by directing Plaintiff not to miss any more days.

44. In July 2019, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

45. In July 2019, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

46. On August 2, 2019, Plaintiff received correspondence from Defendant Committee's attorney stating only that if Plaintiff he missed any more school days, he would be removed from program.

47. Plaintiff remained sober and without any bi-polar episodes for a year.

48. On July 6, 2020, Plaintiff missed class because he had Covid.

49. On September 14, 2020, Plaintiff missed class due to treatment for his disabilities. He provided Defendants with a doctor's note via an email to training center director Jim Wilson.

50. On October 12, 2020, Plaintiff went to Defendants' training center early and personally told training director Wilson that he was struggling with his disabilities and was going to check himself into the hospital.

51. From October 12, 2020 to October 19, 2020, Plaintiff was hospitalized for treatment of his disabilities.

52. On October 19, 2020, Plaintiff was discharged from the hospital and provided a letter from the hospital to Defendants.

53. In October 2020, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

54. In October 2020, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

55. On November 30, 2020, Plaintiff underwent an intake assessment at Ascension Eastwood Behavior Health and received a diagnosis of Alcohol Dependence.

56. On December 1, 2020, Plaintiff provided Defendants with correspondence from his medical treaters regarding the November 30, 2020 assessment and diagnosis.

57. In December 2020, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

58. In December 2020, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

59. On June 13, 2021, Plaintiff missed class due to inpatient psychiatric hospitalization.

60. Plaintiff remained hospitalized for psychiatric treatment of his disabilities from June 13, 2021 until June 21, 2021.

61. Plaintiff provided Defendants with medical documentation regarding his June 13-21, 2021 hospitalization.

62. In June 2021, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

63. In June 2021, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

64. On July 5, 2021, Plaintiff missed class due to inpatient psychiatric hospitalization.

65. Plaintiff remained hospitalized for psychiatric treatment of his disabilities from July 5, 2021 to July 9, 2021.

66. Plaintiff provided Defendants with medical documentation regarding his July 5-9, 2021 hospitalization.

67. In July 2021, Defendants did not advise Plaintiff of his rights under the Family Medical Leave Act and did not provide any FMLA paperwork for completion by Plaintiff's physicians.

68. In July 2021, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

69. In July 2021, Plaintiff explained to his then-contractor (Climate Pros) that he had disabilities for which he is being treated. The management of Climate Pros were accommodating and told Plaintiff to report back to work on July 13, 2021 after his July 12, 2021 class.

10

70. On July 12, 2021, Plaintiff attended class at the training center. At the class, training director Wilson ordered Plaintiff to appear before Defendant Committee's board the next day.

71. On July 13, 2021, Plaintiff, who was then in Period 8 of the 10 Period apprenticeship, appeared before Defendant Committee's board and again explained the reasons for his absences and offered additional copies of his medical documentation. Defendant Committee declined receipt of the copies but acknowledged Plaintiff's disabilities. Plaintiff explained he had had some setbacks and hospitalizations but was still in counseling and attending AA meetings to get his disabilities under control. Plaintiff was then dismissed from room while the board deliberated for over an hour. Plaintiff was then brought back into the room where he was advised that the board of Defendant Committee had decided to terminate him from the apprenticeship program and told him that Defendants had accommodated Plaintiff "as much as they could".

72. On August 11, 2021, Plaintiff received correspondence from Defendants' counsel confirming his termination.

73. Similarly situated apprentices who miss class days are allowed to make them up at the end of the apprenticeship and/or repeat periods of the apprenticeship program. Plaintiff was not offered any corrective action.

74. Defendants were made aware of Plaintiff's disabilities in 2017.

11

75. For the 4+ years of his apprenticeship with Defendants, Defendants never advised Plaintiff of his rights under the Family Medical Leave Act and never provided any FMLA paperwork for completion by Plaintiff's physicians.

76. For the 4+ years of Plaintiff's apprenticeship with Defendants, Defendants did not engage in any form of interactive process to address Plaintiff's disabilities and any needed accommodations.

## COUNT I
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### Interference

77. Plaintiff incorporates here all previously stated allegations.

78. Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(a):

   a. Plaintiff worked for Defendant for more than one year; and

   b. Plaintiff worked in excess of 1,250 hours for the preceding 12 month period at all relevant times.

79. Defendants are "employers" as defined by the FMLA, 29 U.S.C. § 2611(4)(a), as an entity or person engaged in commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

80. Plaintiff was entitled to leave as an eligible employee who had a serious health condition that made him unable to perform the functions of his position.

81. Plaintiff had a serious health condition as defined by federal regulations to the FMLA, 29 C.F.R. § 825.115(a):

   a. He suffered a period of incapacity of more than three consecutive, full calendar days; and

   b. He had subsequent periods of incapacity relating to the same condition that also involved two or more times of in-person treatment within thirty days of incapacity or treatment by a health care provider in person resulting in a regimen of continued treatment.

82. Plaintiff's condition caused incapacity in that he was medically unable to perform his work.

83. Plaintiff received medical treatment in the form of medication and counseling, among others, for his condition.

84. Plaintiff suffered multiple periods of incapacity as defined and within the FMLA.

85. Under regulations regarding the FMLA:

When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. . . . Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. . . . All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility

as to that reason for leave does not change during the applicable 12- month period. *Id.* at § 825.300(b)(1).

86. This eligibility notice must include a statement of whether the employee is eligible for the FMLA, and if the employer states that the employee is not eligible FMLA leave, it must provide at least one reason why. *Id.* at § 825.300(b)(2).

87. Defendants never provided any eligibility notice to Plaintiff as required by regulations to the FMLA.

88. Defendants failed to provide Plaintiff any other notice of his rights under the FMLA even though Plaintiff gave notice that he had or may have had a serious health condition.

89. Defendants willfully violated the FMLA.

90. Defendants' failure to follow the notice requirements set forth in the federal regulations constituted an interference with, restraint, or denial of the exercise of Plaintiff's FMLA rights.

91. Even after Plaintiff made Defendants aware that he had or may have had a serious health condition that required leave to treat the condition, Defendants interfered with Plaintiff's right to FMLA leave by denying him leave and terminating his employment for exercising leave.

14

92. As such, Defendants' willful actions interfered with Plaintiff's right to FMLA leave as prohibited by the FMLA. 29 U.S.C. § 2615(a)(1).

93. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

WHEREFORE, Plaintiff is entitled to back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, compensatory damages, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief this Court deems just and equitable.

### COUNT II
### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### Retaliation

94. Plaintiff incorporates here all previously stated allegations.

95. As stated in Count I, Plaintiff was qualified for leave under the FMLA.

96. Plaintiff requested medical leave multiple times as required by his doctor for an intermittent leave and provided medical documentation stating the restriction to Defendants as soon as practicable.

97. Defendants retaliated against Plaintiff for taking protected medical leave by terminating him.

98. Terminating Plaintiff for taking protected medical leave was retaliatory and a violation of the FMLA. 29 U.S.C. § 2615(a)(2).

99. Defendant's actions in terminating Plaintiff in retaliation for his FMLA leave were willful.

100. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

WHEREFORE, Plaintiff is entitled to back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, compensatory damages, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief this Court deems just and equitable.

## COUNT III
## DISABILITY DISCRIMINATION
## IN VIOLATION OF
## THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

101. Plaintiff incorporates here all previously stated allegations.

102. As detailed in the above General Allegations, at all relevant times, Plaintiff was an individual with disabilities within the meaning of the Persons With Disabilities Civil Rights Act. Specifically, Plaintiff has physical or mental

impairments that substantially limit one or more of his major life activities, to wit: Bo-Polar Disorder and alcoholism, has a record of the impairments, and/or is regarded by Defendants as having the impairments.

103. Plaintiff repeatedly requested in writing reasonable accommodations including, but not limited to, days off for medical treatment.

104. Defendants, through their employees, agents, and representatives, denied Plaintiff's requests for reasonable accommodations.

105. Defendants' decision to deny Plaintiff's requests for a reasonable accommodation constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

106. Defendants, through their employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment because he is an individual with a disabilities within the meaning of the Persons With Disabilities Civil Rights Act.

107. On or about July 13, 2021, Defendants terminated Plaintiff's employment.

108. During Plaintiff's employment, Defendant, through its employees, agents, representatives, treated Plaintiff differently from similarly situated non-disabled employees in the terms and conditions of employment including, but not

limited to, by terminating him and/or refusing to provide days off from work, because he is an individual with disabilities within the meaning of the Persons With Disabilities Civil Rights Act.

109. Defendants' decision to treat Plaintiff differently from similarly situated non-disabled employees because he is an individual with a disability, has a record of impairments, and/or they regarding Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

110. The actions of Defendants and their agents, representatives, and employees were intentional and in disregard to rights and sensibilities of Plaintiff.

111. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**WHEREFORE**, Plaintiff JAMES MORASSO prays that this Honorable Court grant the following remedies:

A. Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*

  B. Award Plaintiff all lost wages and the value of fringe benefits, past and future, to which he is entitled;

  C. Award Plaintiff compensatory damages;

  D. Award Plaintiff liquidated damages;

  E. Award Plaintiff punitive damages;

  F. Award Plaintiff reasonable attorney's fees, costs, and interest;

  G. Award Plaintiff such other relief as this Court deems just and proper.

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com

## **JURY DEMAND**

Plaintiff demands a jury trial.

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com